COURT OF APPEALS OF VIRGINIA

Present: Judges McCullough, Russell and Senior Judge Frank
Argued at Norfolk, Virginia


VIRGINIA RETIREMENT SYSTEM

                                                   OPINION BY

v.       Record No. 1124-14-1        JUDGE WESLEY G. RUSSELL, JR.
                                                       MAY 26, 2015

RICKY A. BLAIR


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Brian J. Goodman, Legal Affairs and Compliance Coordinator (Mark
R. Herring, Attorney General; John W. Daniel, II, Deputy Attorney
General; Heather Hays Lockerman, Senior Assistant Attorney
General/Section Chief, on brief), for appellant.

Jeffrey M. Summers (David L. Horne; The Law Office of Jeffrey M.
Summers, PLLC; David L. Horne, PLLC, on brief), for appellee.


The Virginia Retirement System (VRS) appeals the decision of the circuit court reversing

VRS's denial of the disability retirement benefits application filed by Ricky A. Blair, appellee. The

circuit court ordered VRS to make disability payments to Blair and awarded Blair "legal fees and

costs." On appeal, VRS argues that the circuit court misapplied the "substantial evidence" standard

of review required by the Virginia Administrative Process Act (APA or Act) and that the court erred

in awarding Blair fees and costs under Code § 2.2-4030. We agree.

## I. Background

Blair entered VRS in October 2005, when he became employed as an equipment operator

for the City of Hampton. His job duties included operating dump trucks, sign trucks, and back

rollers; making repairs to vehicles and mechanical tools; setting up sites with signs, cones, and

barricades; loading and unloading materials and equipment; using tools such as shovels, pick axes,

jackhammers, brooms, and tack buckets; and keeping inventory. After sixty-one months of service, Blair retired on November 1, 2010, at age 55. His last day of work was October 29, 2010. Later in November, Blair made his first application to VRS for disability retirement benefits, seeking a backdated effective date of November 1, 2010. The bases for his claim included alleged arthritis, Chronic Obstructive Pulmonary Disease (COPD), knee problems, mini strokes, a pinched nerve in the neck, memory issues, dizziness, and depression.

Blair's initial application included his own description of his disabilities; physician's reports from two doctors, one from a pulmonologist, Dr. Todd E. Duggan, focusing on Blair's COPD, and the other from Dr. Adrian T. Baddar concerning his arthritis; a job description from the City of Hampton; and a few other supporting medical records. This application was referred to the VRS Medical Board in January 2011.

The Medical Board is "composed of physicians or other health care professionals who are not eligible to participate in" VRS. Code § 51.1-124.23. Among other duties, the Medical Board is charged, by statute, with "[i]nvestigating all essential health and medical statements and certificates filed in connection with disability retirement . . ." and "[s]ubmitting to [VRS] a written report of its conclusions and recommendations on all matters referred to it." Id. The Medical Board recommended denial of Blair's application on February 2, 2011.

Six days later, VRS issued its first application denial, and Blair, by counsel, sought review within VRS. In June 2011, the matter was re-referred to the Medical Board. As part of this review, the Medical Board considered all the previously reviewed materials as well as documentation regarding follow-up medical visits. The Medical Board again recommended denial, finding that Blair's conditions were not disabling. VRS again denied the application.

After his application was denied for the second time, Blair sought an informal fact-finding proceeding under the APA. As part of this proceeding, Blair was permitted to submit additional

medical evidence. The matter was heard before a hearing officer on November 17, 2011. Blair was represented by counsel. At the disability hearing, Blair testified to the physical demands of his job as an equipment operator and described the effects of his stated medical issues. Dr. Duggan, who was a treating physician of Blair, described his certifications and expertise and testified regarding the nature of some of Blair's conditions and his treatment of Blair. Blair's wife, who had known Blair for ten years, and a friend of Blair relayed their observations of Blair's health over time. The friend also was Blair's supervisor from his prior employment with the physical plant at Hampton University, where Blair engaged in carpentry work for five years. All of the previously submitted records also were before the hearing officer.

After completing her review of the testimony and other materials, the hearing officer issued a seven-page report. The report addressed all of the conditions that Blair alleged caused his need for disability retirement, including problems with his knees. In addition to her thorough review of each of Blair's allegedly disabling conditions, the hearing officer noted the following:

> Difficult to convey in summarizing the various visits related to his claimed disabling conditions, but apparent in an overall review of the medical records submitted is that Mr. Blair was a patient who sought treatment for a particular ailment on one day or for a period of time, then complained about something entirely different . . . . His stated reasons for being unable to work at his job with the City of Hampton simply are not consistently corroborated by the medical records.

Based on all that she had reviewed, the hearing officer found that "Mr. Blair has not met the requirements of Virginia Code § 51.1-156" and recommended to VRS that he be denied benefits.

In January 2012, the Medical Board reviewed the matter a third time. At that time, the Medical Board considered the medical evidence, including the testimony of Dr. Duggan from the informal fact-finding hearing. Once again, based on its review of the materials, the Medical Board recommended denial of Blair's application.

- 3 -

In June 2012, VRS denied, in a final case decision, Blair's application for disability benefits. The case decision noted that VRS had reviewed the medical evidence and the report of the hearing officer. VRS specifically found that "the medical evidence has not satisfied each element of [Code] § 51.1-156(E) . . . ." VRS specifically found that Blair was "not incapacitated from further performance of his duties"; that to the extent that incapacity could be inferred from the evidence, the evidence did not "demonstrate that such incapacity was likely to be permanent"; and that some of the conditions for which Blair sought disability preexisted his membership in VRS and the evidence did not indicate that such conditions "substantially worsened during [Blair's] employment" with the City of Hampton. The case decision noted that the Medical Board had reviewed Blair's application on multiple occasions and had concluded each time that the medical evidence did not support an award of benefits.

Blair timely appealed the case decision to the circuit court in accord with the APA. The circuit court heard the matter in November 2013 and issued its letter opinion in May 2014. In the letter opinion, the circuit court reversed VRS's benefits determination, finding that "VRS ignored substantial evidence in the record . . . ." The circuit court then detailed its view of the evidence and found that Blair met the requirements of Code § 51.1-156. By order dated August 12, 2014, the circuit court directed VRS to grant Blair disability benefits retroactive to his retirement date and to pay "Blair's legal fees and costs."

This appeal followed.

## II. Analysis

VRS argues that the circuit court misinterpreted the "substantial evidence" standard of review found in Code § 2.2-4027. Blair argues that the circuit court's interpretation and application of the standard of review was consistent with amendments to Code § 2.2-4027 enacted in 2013.

- 4 -

Thus, the appeal raises a question of statutory interpretation that we review *de novo*. Va. Empl.

Comm'n v. Cmty. Alternatives, Inc., 57 Va. App. 700, 708, 705 S.E.2d 530, 534 (2011).

Code § 2.2-4027

The APA affords persons aggrieved by a final case decision of an administrative agency a

right of judicial review by a circuit court. Code § 2.2-4026. Code § 2.2-4027 of the Act establishes

that, upon such a review, the party complaining of the agency action must demonstrate an error of

law, which error may include "the substantiality of the evidentiary support for findings of fact."

Code § 2.2-4027 further directs that

> When the decision on review is to be made on the agency record, the
> duty of the court with respect to issues of fact shall be to determine
> whether there was substantial evidence in the agency record to
> support the agency decision. The duty of the court with respect to
> the issues of law shall be to review the agency decision *de novo*.

This language is the result of legislation enacted by the General Assembly in 2013, which amended

Code § 2.2-4027 as follows:

> When the decision on review is to be made on the agency record,
> the duty of the court with respect to issues of fact shall be ~~limited
> to ascertaining~~ *to determine* whether there was substantial evidence
> in the agency record ~~upon which the agency as the trier of the facts
> could reasonably find them to be as it did~~ *to support the agency
> decision. The duty of the court with respect to the issues of law
> shall be to review the agency decision de novo. The court shall
> enter judgment in accordance with § 2.2-4029.*

2013 Va. Acts ch. 619. This amendment took effect July 1, 2013. Blair contends that this

amendment evinces a legislative intent to reduce the deference afforded agency fact determinations

and to allow a circuit court to weigh the evidence. We disagree.

In reaching this conclusion, we apply common principles of statutory construction. First, we

construe the provisions of a statute according to the ordinary meaning of the words contained

therein, in light of the "'context in which they are used.'" See, e.g., City of Va. Beach v. Bd. of

Supervisors, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993) (quoting Grant v. Commonwealth, 223

Va. 680, 684, 292 S.E.2d 348, 350 (1982)).  Nevertheless, we acknowledge that, "when current and prior versions of a statute are at issue, there is a presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law[,]" W. Lewinsville Heights Citizens Ass'n v. Bd. of Supervisors, 270 Va. 259, 265, 618 S.E.2d 311, 314 (2005) (citing Virginia-American Water Co. v. Prince William Cnty. Serv. Auth., 246 Va. 509, 517, 436 S.E.2d 618, 622-23 (1993); Dale v. City of Newport News, 243 Va. 48, 51, 412 S.E.2d 701, 702 (1992)), but we are not bound by this presumption when "there is clear indication that the General Assembly intended that the legislation declare or explain existing law," Cooper v. Adler, 44 Va. App. 268, 280, 604 S.E.2d 747, 753 (2004) (citing Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975) (*per curiam*)).  Further, "in construing a statute that has been amended by the General Assembly, we presume that the legislature acted with full knowledge of the law as it affected the subject matter[,]" Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002), and where "a term has a known legal definition, that definition will apply unless it is apparent that the legislature intended otherwise," Chappell v. Perkins, 266 Va. 413, 420, 587 S.E.2d 584, 588 (2003) (citing Price v. Harrison, 72 Va. (31 Gratt.) 114, 117-18 (1878)).

Although the General Assembly changed some of the phrases associated with a circuit court's review of an agency's factual findings (i.e., changing "limited to ascertaining" to "to determine" and "upon which the agency as the trier of the facts could reasonably find them to be as it did" to "to support the agency decision"), it declined to delete, alter, or modify, or provide a specific definition for the operative phrase "substantial evidence."

The meaning and application of the substantial evidence standard in the context of appellate review have been long established.  As we have stated on numerous occasions, an appellate court applying the substantial evidence standard may "reject an agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different

conclusion. 'Substantial evidence' refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 607, 665 S.E.2d 862, 865 (2008) (citations omitted). See also VRS v. Cirillo, 54 Va. App. 193, 206-07, 676 S.E.2d 368, 374-75 (2009).

When enacting the 2013 amendments, the General Assembly was aware of our well-established definition and application of the substantial evidence standard. See Washington v. Commonwealth, 46 Va. App. 276, 281, 616 S.E.2d 774, 777 (2005) ("[W]e assume legislative familiarity with Virginia case law when the legislature enacts a statute which might impact upon that law."). With such knowledge, the General Assembly elected to retain the phrase "substantial evidence" in the statute and did not suggest from any of the changes it did make that it wished to alter the established definition and application of the substantial evidence standard.[1]

Our conclusion is buttressed by other changes to Code § 2.2-4027 that the General Assembly made in 2013. For example, the 2013 amendments include the language that "[t]he duty of the [circuit] court with respect to the issues of law shall be to review the agency decision *de novo*." 2013 Va. Acts ch. 619. The fact that the General Assembly elected to add specific language to the statute to make it clear that a circuit court is conducting a robust review of *legal* challenges while not making a similar change regarding *factual* challenges strongly suggests that the General Assembly did not intend the amendment to allow the circuit court to reweigh an agency's factual determinations.

---

[1] Moreover, the General Assembly made no change to the beginning of Code § 2.2-4027, which continues to provide that "[t]he burden shall be upon the party complaining of agency action" to demonstrate error. We have interpreted this portion of the statute, as it pertains to factual challenges to agency action, to mean that "[t]he burden of proof rests upon the party challenging the agency determination to show that there was *not* substantial evidence in the record to support it." Smith v. Dep't of Mines, Mineral & Energy, 28 Va. App. 677, 685, 508 S.E.2d 342, 346 (1998) (emphasis added) (decided under prior Code § 9-6.14:17, recodified as Code § 2.2-4027).

Finally, our conclusion also finds support in a proposed change to Code § 2.2-4027 that the General Assembly rejected in 2013. The changes that ultimately became Chapter 619 of the 2013 Acts of Assembly began as Senate Bill 944. When it was first introduced, SB 944 contained the following language: "Upon motion of any party, the court may augment the agency record in whole or in part." Senate Bill No. 944 (offered Jan. 9, 2013) (available at http://leg1.state.va.us/cgi-bin/legp504.exe?131+ful+SB944). The General Assembly rejected this change when Senate Committee on General Laws and Technology amended the bill by deleting this language. Id. The General Assembly's rejection of the attempt to have circuit courts play a role in the compilation of the record reaffirms the General Assembly's intention to have the circuit court serve as an appellate court as opposed to a factfinder in appeals of agency action.

Therefore, a plain reading of the statute, with due consideration to the words used and their context in the overall statutory scheme, and the applicable canons of statutory construction, assures us that the legislature effected no change to the substantial evidence standard in place prior to the 2013 amendments. Holding otherwise would serve to contravene the General Assembly's intended goal of "'giv[ing] great stability and finality to the fact-findings of an administrative agency.'" 1st Stop Health Services v. DMAS, 63 Va. App. 266, 277, 756 S.E.2d 183, 189 (2014) (quoting Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983)).

Although, prior to today, this Court has not articulated expressly what effect, if any, the 2013 amendments have on the established substantial evidence standard,[2] we implicitly have rejected appellee's contention in our reviews of agency decisions coming before this Court since the amendment became effective. These cases either recite the standard as established prior to the amendment or apply the standard without discussing the change in language.[3]

Most recently, in Virginia Marine Commission v. Insley, 64 Va. App. 569, 770 S.E.2d 209 (2015), this Court addressed a circuit court decision that reversed the Virginia Marine Commission's revocation of two fishing licenses. The licenses had been revoked after the commission found that the licensees had multiple convictions for violations of the Commonwealth's fishing laws. The circuit court determined that the agency record contained insufficient evidence to demonstrate that the convictions rose to a "course of conduct," and therefore, found that the evidence did not support the Commission's finding that the licenses ought to have been revoked. On the Commission's appeal to this Court, we quoted the current language of Code § 2.2-4027 and then explained the standard as follows:

> This Court has held that the phrase substantial evidence refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [I]n the context of factual issues, the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of

---

[2] Compare this case, with Wara Wara, Inc. v. Va. Dep't of Alcoholic Bev. Control, No. 1005-14-4, 2015 Va. App. LEXIS 62 (Va. Ct. App. Feb. 24, 2015 ) (discussing the Code § 2.2-4027 amendment but resolving the case on other grounds); Travis v. Va. Dep't of Soc. Servs., No. 0495-13-2, 2013 Va. App. LEXIS 261 (Va. Ct. App. Sept. 24, 2013) (noting amendment, but parties conceding that the legislative changes did not affect the standard of review). Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

[3] See DMAS v. Ablix Corp., No. 0767-14-2, 2015 Va. App. LEXIS 82 (Va. Ct. App. Mar. 17, 2015); LifeCare Med. Transps. v. DMAS, 63 Va. App. 538, 759 S.E.2d 35 (2014); Chesapeake Bay Found., Inc. v. Commonwealth, No. 1897-12-2, 2014 Va. App. LEXIS 149 (Va. Ct. App. Apr. 22, 2014); Lewis-Gale Med. Center, LLC v. Romero, No. 1289-13-3, 2014 Va. App. LEXIS 158 (Va. Ct. App. Apr. 29, 2014).

the agency, and the purposes of the basic law under which the agency has acted. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.

Id. at 574, 770 S.E.2d at __ (internal quotation marks and citations omitted). Because this remains the proper standard of review under the amended Code § 2.2-4027, we expressly adopt this construction and apply it here.

### Circuit Court's Application of the Standard

Having determined that VRS is correct that the 2013 amendments to Code § 2.2-4027 did not alter the established standard for a circuit court reviewing an agency's factual determinations, we turn to VRS's contention that the circuit court misapplied that standard in the instant case. Specifically, VRS contends that, while nominally applying the correct standard, the circuit court effectively "reverse[d] the correct application of the 'substantial evidence' standard." We agree.

In its letter opinion finding that Blair had met his burden on appeal, the trial court correctly stated the standard when it asked, "Is there substantial evidence in the Agency's record to support the Agency's decision?" Yet, the court misapplied this standard when, in reversing VRS, it based its decision on its conclusion that "the Agency ignored substantial evidence in the record" and that there was "substantial evidence in the Agency's record that does not support the Agency's decision."

Although there certainly was evidence in the record that could have supported an award of benefits to Blair, such a conclusion is largely irrelevant to finding whether substantial evidence, as defined above, supported VRS's decision. It is not unusual for there to be conflicting evidence in contested cases, and it is the job of the *agency*, as factfinder, to resolve those conflicts. The existence of evidence in the record supporting a contrary conclusion does not establish that there is not substantial evidence in the record to support an agency's determination. See Johnson v. VRS, 30 Va. App. 104, 111, 515 S.E.2d 784, 788 (1999); cf. Consolo v. Fed. Mar. Comm'n, 383 U.S.

607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Consequently, the question that was before the circuit court and is presently before this Court is whether, under the substantial evidence standard, there was sufficient evidence to support VRS's denial of benefits. We find that there was.

Evidence in the Record Supporting VRS's Determination

On appeal, in determining whether substantial evidence supports VRS's decision, a reviewing court considers the agency record in its entirety, reviewing the facts in the light most favorable to sustaining the agency's decision. Hedleston v. VRS, 62 Va. App. 592, 597, 751 S.E.2d 1, 3 (2013) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 263, 369 S.E.2d 1, 18-19 (1988)). "'[O]nly if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion'" can a reviewing court reject VRS's findings. Insley, 64 Va. App. at 575, 700 S.E.2d at __ (quoting Johnston-Willis, Ltd., 6 Va. App. at 242, 369 S.E.2d at 7). Thus, we review the agency record to see whether it contains evidence that would allow a reasonable mind to conclude that VRS's determination was correct.

The reports of the Medical Board constitute such evidence. We previously have observed that the Medical Board is "a neutral evaluatory mechanism for the Retirement System to gather and analyze medical opinions and reports." Johnson, 30 Va. App. at 112, 515 S.E.2d at 788. VRS is not bound by the Medical Board's recommendations; however, the reports of the Medical Board can provide substantial evidence for a final determination by VRS. Id. at 111, 515 S.E.2d at 788.

Blair's claim for benefits was reviewed on multiple occasions by the Medical Board. On each occasion, the Medical Board concluded that Blair's medical records and other evidence, including the testimony of one of his treating physicians, did not establish that he was permanently disabled for the purposes of Code § 51.1-156(E). VRS explicitly referenced the

- 11 -

reports of the Medical Board in its final case decision, and those reports provided substantial evidence for VRS's ultimate determination.[4]

In addition to the Medical Board reports, VRS also had before it the hearing officer's report.[5] As noted above, the hearing officer provided a detailed seven-page report based on a review of the medical and other documentation as well as the testimony of the witness, including Blair and one of his treating physicians. The hearing officer reviewed each of the conditions Blair claims entitled him to disability, ultimately concluding that the conditions did not entitle him to benefits pursuant to Code § 51.1-156(E).

In support of this conclusion, the hearing officer made several findings based on the evidence before her. The hearing officer found that, up to the date of his retirement, Blair was performing his duties without restriction and had not requested any accommodations. Furthermore, the hearing officer found that the evidence established that Blair, in explaining his absences over his last year of employment, would submit medical documentation that did not correspond to the reasons he had given for the absences. This led the hearing officer to conclude that Blair's "stated reasons for being unable to work at his job with the City of Hampton simply are not consistently corroborated by the medical records." In short, the hearing officer found Blair to be less than credible.

---

[4] In its letter opinion, the circuit court takes issue with the contents of the Medical Board reports and ultimately credits the conclusions offered by one of Blair's treating physicians over the conclusion of the Medical Board. Even if the circuit court found Blair's physician's conclusions more persuasive, this was error. "A circuit court reviews an administrative decision as an appellate court reviews a trial court decision." Cirillo, 54 Va. App. at 203, 676 S.E.2d at 373. As noted above, this role prohibits a circuit court from reweighing the evidence and substituting its judgment for the judgment of the factfinder.

[5] Neither the circuit court's letter opinion nor its order makes any reference to the hearing officer's reports or findings.

In addition to raising questions regarding the credibility of Blair, the hearing officer called into question what weight, if any, the testimony of Dr. Duggan, the physician treating Blair for COPD, was due. Specifically, she noted that Dr. Duggan's initial physician's report erroneously stated that Blair was still working when he first saw Dr. Duggan on November 18, 2010. Dr. Duggan still believed this at the time of the informal fact-finding hearing a year later. In the intervening year, Dr. Duggan had written a letter seeking adjustments to Blair's work environment despite the fact that Blair had been retired for almost three months at the time the letter was written. All of these facts led the hearing officer to conclude that "Dr. Duggan was clearly offering his opinions based on misinformation . . ." and that "a closer examination of the factual basis behind his opinion raises considerable doubt as to the validity of that opinion."[6]

We previously have held that a trier of fact may discount or reject medical testimony that is based on incorrect or incomplete information. See, e.g., Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 171, 543 S.E.2d 619, 623 (2001); Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994). Based on the hearing officer's findings regarding credibility and the issues with Dr. Duggan's testimony, the hearing officer and, ultimately, VRS were free to discount much of Blair's evidence and all of Dr. Duggan's testimony.

The hearing officer's credibility determination, her detailed report, the reports of the Medical Board, and all of the other evidence and medical documentation were before VRS when it rendered its decision. In denying Blair's claim, VRS relied upon both the reports of the Medical Board and the findings of the hearing officer. Accordingly, there was substantial

---

[6] Blair appropriately conceded at oral argument that the hearing officer and ultimately VRS could infer from this that either Blair had provided incorrect information to Dr. Duggan or that Dr. Duggan lacked familiarity with the underlying facts. Either conclusion provided VRS with a substantial basis for denying Blair's claim for benefits. Blair also conceded at oral argument that VRS's credibility determinations are binding on both the circuit court and this Court unless we find those determinations to be inherently incredible.

evidence to support the case decision, and the circuit court erred in reversing VRS's determination.

Reports of the Medical Board

Blair argues that the reports of the Medical Board should not have been considered by VRS because the Medical Board was not properly constituted.[7] He bases this argument on his contention that the reports of the Medical Board were not signed by a physician, but rather, were signed by a social worker. For the reasons that follow, we find this argument unpersuasive.

Blair did not challenge VRS's consideration of the medical reports while his case was pending before the agency.[8] Instead, while the matter was before the agency, he challenged only the conclusions contained in the reports. It was not until he appealed his case to the circuit court that Blair first challenged the reports on the ground that the reports had not been signed by a physician.

Accordingly, we find that Blair waived any objection to the consideration of the reports. Appellate review of a final case decision rendered by an agency, whether in a circuit court or this Court, is limited to the agency record. Code § 2.2-4027. A failure of a party to raise an issue in the proceedings before the agency prohibits him from raising the issue on appeal. See, e.g., Doe v. Va. Bd. of Dentistry, 52 Va. App. 166, 181, 662 S.E.2d 99, 106 (2008); Surprenant v. Bd. for Contrs., 30 Va. App. 165, 174, 516 S.E.2d 220, 224 (1999); Pence Holdings v. Auto Ctr., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995).

---

[7] Blair also argues that VRS failed to rely on the Social Security Administration's determination of permanent disability, contending that the higher standard associated with Social Security Disability determinations essentially required VRS to find for Blair. This argument is wholly without merit: VRS, in making a determination regarding VRS disability retirement benefits, is not bound by disability determinations made by an administrative agency of another sovereign, utilizing a different statutory standard, in a case that does not involve VRS or VRS disability retirement benefits.

[8] At oral argument, Blair, with commendable candor, conceded that no challenge to VRS's ability to consider the reports of the Medical Board was raised while the matter was pending before the agency.

Even if Blair had not waived this issue, we could not sustain his argument on this record. As noted above, the Medical Board is a creature of statute. Code § 51.1-124.23. There is no requirement in Code § 51.1-124.23 that the physician members of the Medical Board actually sign the report or that the report be transmitted to VRS with a signature of someone who is a physician.

On the record before us, there is simply no evidence to establish that the Medical Board was not properly constituted in this case. The actions of VRS in appointing the Medical Board and the Medical Board in reporting its findings are agency action. Accordingly, the reports of the Medical Board come to us cloaked in a presumption of correctness and regularity. See, e.g., Hladys v. Commonwealth, 235 Va. 145, 148, 366 S.E.2d 98, 100 (1988) (stating that appellate courts "apply a presumption that public officials have acted correctly"); Code § 2.2-4027 (providing with respect to an agency's factual determinations that "the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted"). Because Blair offers nothing but speculation that the Medical Board was not properly constituted in this case or otherwise failed to comply with the statute, he has not overcome the presumption.

<u>Attorneys' Fees and Costs</u>

Code § 2.2-4030 of the APA authorizes reasonable costs and attorneys' fees to be recovered from an agency in proceedings arising under the Act. Nevertheless, such award is available only if the claimant "substantially prevails on the merits of the case *and* the agency's position is not substantially justified . . . ." Code § 2.2-4030 (emphasis added). Given our finding that VRS's position is not only substantially justified, but is, in fact, correct, we vacate the trial court's order directing VRS to pay "Blair's legal fees and costs."

III.  Conclusion

For the reasons stated above, we reverse the circuit court's August 12, 2014 judgment and order and enter final judgment for VRS on all issues.[9]

Reversed and final judgment.

---

[9] Code § 2.2-4029's requirement that matters be remanded to the agency applies only when "a regulation or case decision is found by the court not to be in accordance with law under § 2.2-4027 . . . ."  Because we are reinstating the agency's action, final judgment is appropriate.